## Case No. 2,142.

BURDELL et al. v. DENIG et al.

[2 Fish. Pat. Cas. 588.] [1]

Circuit Court, S. D. Ohio. Oct Term, 1865.

PATENTS — REISSUE — EFFECT ON PRIOR ASSIGNMENT — CONSTRUCTION OF ASSIGNMENT — INFRINGEMENT—DAMAGES—PROOF—RIGHT TO SELL PATENTED ARTICLE — REVOCATION — CONSTRUCTION OF CONTRACT.

1. A reissue does not enure to the benefit of a prior assignee. He takes by ratification, not by enurement.

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

2. Where B. owned the right to Franklin county, under Singer's patent and Wilson's patent, and sold to L. the right to use and sell, in said county, "Singer's patent sewing machines, as mentioned in the patent granted to I. M. Singer, August 12, 1851"—Held: That this was a clear assignment of all the rights which B. had in the Singer machine under either patent.

[See Day v. Stellman, Case No. 3,690; Stebbins Hydraulic Elevator Manuf'g Co. v. Stebbins, 4 Fed. 445.]

3. The words "as mentioned in the patent granted to I. M. Singer, August 12, 1851," are merely used as descriptive or for identification, and do not refer to the peculiarities claimed in that patent.

4. Where the plaintiff, as proof of damages, exhibited to the jury a machine containing his improvement, in connection with other parts covered by other patents, or belonging to the public, and offered no testimony to show what proportion his mechanism bore to the other parts of the machine—Held: That the jury could not be left to grope in the dark to obtain such light as they could, and that the plaintiff was entitled, at most, to nominal damages only.

[As to the measure of damages in patent cases, see note at end of case.]

5. Where an inventor has invented only an improvement, and there is a violation of his exclusive right to use that improvement in connection with the invention of others, or, in connection with a machine previously known and used—in either case—his damages must be limited to the value of his improvement, in connection with the other elements of the machine.

6. Where B. contracted with C. to give to the latter the exclusive right to sell machines within a certain territory, C. agreeing to make certain returns and to pay certain royalties, and C. proceeded, in good faith, to execute the contract, but subsequently failed, to such an extent, that a court of equity would have rescinded the contract—Held: That B. could not revoke the contract, at his option, by notice to C.

7. Even if C. be regarded as the agent of B., there was such an interest vested in C. as rendered the contract irrevocable at the will of B.

8. Where a contract between B. and C. provided that, in any prosecution for a violation of a patent, the costs and expenses were to be borne equally by both parties, but that no suit was to be instituted without the consent of both parties—Held: That although C. could not institute a suit, he might terminate one, and that a settlement with an infringer, made by him in good faith, would be valid as against B.

9. Although the owner of a territorial right, under a patent, might declare his intention of making a close monopoly of his right, yet, if he, by contract, authorized an agent to sell machines without limit, there could, by no possibility, be a close monopoly on the part of the owner of the right or his assignees—while such a contract was in existence—which would give them a right to damages on the principle of profits.

10. Where the plaintiff proved that he designed to maintain a close monopoly, and the defendant, by his evidence, destroyed the possibility of a close monopoly, the burden of proof shifted again to the plaintiff, and it became incumbent upon him to prove a license price, and, in the absence of such proof, he was entitled to nominal damages only.

[At law. Action by William Burdell, D. M. Smith, and S. T. Smith against Augustus M. Denig and William Lee for damages for

infringement of patent. There was a verdict for plaintiffs, and defendants moved to set aside the verdict, and for a new trial, which motion was granted.]

William Burdell, in 1851, bought of the assignees of the patent [No. 7,776] granted to Allen B. Wilson, November 12, 1850, for an "improvement in sewing machines," the exclusive right under said patent for Franklin county, Ohio. About the same time, he purchased the right for the same county, under the patent [No. 8,294] granted to Isaac M. Singer, August 12, 1851, also for improvements in sewing machines [reissued October 3, 1854 (No. 278)]. The patent of Wilson was, in 1856, surrendered and reissued in two divisions [No. 346, January 22, 1856; No. 414, December 9, 1856], but the surrender and reissue were made by the patentee without the knowledge or consent of Burdell. In 1857, Burdell made the following conveyance to one J. Payne Lowe, who, in the same year, assigned it to I. M. Singer & Co., of New York. "In consideration of the sum of eighty dollars, to me paid by J. Payne Lowe, the receipt whereof is hereby acknowledged, I do hereby assign, transfer, and set over to the said Lowe, his representatives and assigns, the exclusive right to use, and sell to others to be used, in the county of Franklin, in the state of Ohio, Singer's patent sewing machines, as mentioned in the patent granted to Isaac M. Singer, dated August 12, 1851, together with the right to have the said machines delivered to be used, or sold to be used, in the said county of Franklin, in the State of Ohio. William Burdell."

In March, 1860, Sarah Burdell, acting for her father, William Burdell, entered into the following contract with Haldeman Crary, of Columbus, Ohio, it being conceded that this was, in effect, the contract of William Burdell: "Article of agreement made and entered into this thirteenth day of March, 1860, between Sarah Burdell, of the county of Franklin, in the state of Ohio, and H. Crary, of the same county—witnesseth: 1. That said Sarah Burdell does hereby authorize and empower the said Crary, for the full term of four years and eight months, or from the date hereof until the twelfth day of November, 1864, as fully and completely as she might do herself had not this agreement been entered into, to sell and use, and to grant to others the right to use, in the said county of Franklin, A. B. Wilson's sewing machine, so known and denominated, for sewing cloth and other fabrics, patented November 12, 1850, and reissued January 22 and December 9, 1856; and also the sewing machine patented by I. M. Singer, together with all the improvements which have been made already, or shall hereafter be made in the same, without additional cost, and also all other sewing machines, of every name or description, to which the said Sarah may have any right, and over which she may have power to exercise any control whatever; and the said Sarah hereby covenants and agrees with the said Crary that, during the said term of four years and eight months, she will not sell or use, or grant to others the right to sell or use, in the said county of Franklin, the sewing machines above specified, or any other of any name, kind, or description, without the consent of said Crary. 2. That the said Crary agrees to make out and deliver to the said Sarah Burdell, or her authorized agent or attorney, on the first day of each and every month, a full and accurate report of all sales of sewing machines of every name, kind, and quality made by him or his agents, during the preceding month, stating the first cost of such machines in the purchase of the same from the manufacturers or their agents until ready for shipping, exclusive of freight or other incidental charges; also the price at which such machine was sold by the said Crary or his agents, and stating also the difference between the said first cost of the said machines and the prices at which the same were sold —on which difference for the preceding month, on the first day of each month when the said report is delivered as aforesaid, the said Crary agrees to pay the said Sarah Burdell, or her authorized agent or attorney, thirty-five per centum during the first six months from the date hereof, and forty per centum thereafter, or until the twelfth day of November, 1864: Provided, however, that if the said per centage, for any one month during the first four months from the date hereof, should not amount to the sum of seventy-five dollars, the said Crary agrees to make it up to the full sum of seventy-five dollars; and the said Sarah agrees that, for any such deficiency or difference between the said per centage and the said sum of seventy-five dollars, the said Crary may reimburse himself out of the first excess of the said percentage, over one hundred dollars, after the expiration of the said four months from the date hereof. 3. It is also agreed by the said Sarah Burdell and the said Crary, that, in any prosecution of an injunction to restrain or prevent the sale or use of any sewing machine in the said county of Franklin, in violation of the right, power, and authority hereby vested in the said Crary to sell or use such machine in said county, and in the prosecution of any suit at law for the recovery of damages for the sale hereafter, or for the use of any such sewing machine hereafter sold, the costs and expenses of any such proceedings at law or in equity shall be borne equally by the said Sarah and the said Crary, each paying one-half of such costs and expenses, and each sharing equally, that is, each being entitled to one-half of the net amount recovered in any such proceeding at law or in equity: Provided, that no such injunction shall be applied for, or any such suit at law instituted without the consent of both parties to this agreement—Provided, also, that, for the purpose

of prosecuting any such suit at law that may be agreed upon by the parties hereto, the power and authority herein vested in the said Crary, shall remain and continue in full force and effect after the expiration of said term of four years and eight months—Provided, also, that, in any suits or proceedings at law or in equity, which the said Sarah may see fit to institute, on account of the use hereafter of any sewing machines heretofore sold, the said Crary shall not be required to defray any portion of the costs and expenses, or be entitled to any share of the amount so recovered in any suit or proceeding so instituted as last aforesaid by the said Sarah. 4. It is agreed that the first report of sales herein provided for, shall be made on the first day of May next, and shall include all sales of sewing machines from this date until the said first day of May. Witness our hands and seals this thirteenth of March, 1860. Sarah Burdell, H. Crary. In presence of Franklin Gale."

In October, 1860, Sarah Burdell served upon Crary a notice revoking this contract, and, in January, 1861, Burdell sold an interest in the territory to his co-plaintiffs. The defendants were manufacturing knapsacks and other accoutrements in the Ohio penitentiary, under a contract for the use of convict labor, and, in the course of such manufacture, employed four Singer machines, one Battelle machine, and two Grover & Baker machines. The Singer machines were purchased in 1861 from I. M. Singer & Co., in New York, and these, as well as the Battelle machine, were provided with what is known as the "wheel feed." In October, 1861, the plaintiffs brought an action at law against the defendants for the recovery of damages accruing since January, 1861, from the use of these machines; and the day after the service of the writ, the defendants obtained from Crary a release of all damages. In the declaration, it was averred that the reissues enured to the benefit of William Burdell, but, upon a former trial, Burdell was offered as a witness to prove that he had ratified the surrender. The court (SWAYNE, Circuit Justice, and LEAVITT, District Judge,) held that an assignee of a patent did not take the benefit of a reissue, obtained after the assignment to him, by enurement, but that he must ratify the surrender, and that such ratification must be proved affirmatively. They also held that proof of ratification could not be made under an allegation of enurement. A juror was, therefore, withdrawn, and the plaintiffs were allowed to amend their declaration, and to aver ratification. At the subsequent trial, it was insisted by the defendants, that the conveyance to J. Payne Lowe exempted the Singer machines (upon which the greater part of the work was done) from all liability to Burdell; that the contract to Crary could not be revoked by Burdell, and that the release given Crary to the defendants was a good defense to the action; and that, in any event, the Crary contract destroyed the presumption of a close monopoly, and, in the absence of proof as to a license fee, entitled the plaintiffs to nominal damages only. The court charged in accordance with the prayer of the defendants, but the jury found a verdict for the plaintiffs with $6,200 damages.

S. S. Fisher and A. F. Perry, for motion.
R. B. Warden and C. D. Coffin, contra.

Before SWAYNE, Circuit Justice, and LEAVITT, District Judge.

SWAYNE, Circuit Justice. This was an action brought to recover damages for the infringement of a patent, the title to which had become vested, by successive assignments, in the plaintiffs. The matter in controversy was the feeding mechanism invented by A. B. Wilson, and covered by his patent, which patent, as already remarked, had passed, by a series of assignments, to the plaintiffs. The plaintiffs proved the use, by the defendants, of several machines involving this mechanism. They proved further, that it was the announced purpose of one of the plaintiffs, who had assigned to the others, to reserve to himself a close monopoly as it regards the rights transferred to him by assignment, in respect to Franklin county, the locality to which the assignment related. They proved the amount of profits which had been made by the defendants by the use of the machines which they were proved to have used, involving the mechanism in question; and the plaintiffs exhibited to the jury a machine involving this mechanism as evidence of the extent to which a portion of the entire machinery used by the defendants belonged to Burdell, and was covered by his patent. No further evidence was given upon the subject.

The defendants relied upon several defenses, among them an assignment by William Burdell to J. Payne Lowe, of an exclusive right to use and sell the Singer machines within Franklin county; and they proved, by Dr. Ide, that nearly all the work to which the controversy related, and out of which nearly all the profits in question were made, was done upon the Singer machines. They proved a contract between Burdell and one Crary, and insisted that that contract was still in force, and that it repelled the idea of a close monopoly, on the part of the plaintiffs, in respect to Franklin county. They proved also what they claimed to be an accord and satisfaction under that contract. And they claimed, as a further defense, that the plaintiffs not having proved the value of the feeding mechanism in the machines which had been used, as compared with the other portions of the machines in question, the plaintiffs could recover only nominal damages. The jury found a verdict for $6,200; and a motion has been made to set aside that verdict and grant a new trial.

We will consider the reasons which have been presented, and the arguments which we have heard in support of and against this motion, in the order in which they were discussed.

First, as to the assignment to J. Payne Lowe. It was insisted, at the trial, on the part of the plaintiffs, that that assignment related to the Singer machine as it was made under the patent of 1851; and that that patent was different, and described a different machine from that described by the reissued patent of 1854.

The proof, in the first place, was the deposition of Stoops, that, from the outset—the emanation of the first patent—there has been no difference whatever, as regards the feeding mechanism of the Singer machine. The question was put to him:

"State how far the feeding mechanism of the No. 2 Singer sewing machine, as it has been constructed, corresponds with the feeding mechanism described in the patent to Isaac M. Singer of August 12, 1851."

Ans. "No substantial difference of the feeding mechanism of the sewing machine, from the beginning to the present time, has been made."

We understand that answer to cover two points. 1. That there has been no difference made as regards the invention with reference to the feeding mechanism of this machine—no change made from the outset. 2. That there has been no change made in the mode of constructing the machine as regards that mechanism; and we understand it to imply very clearly, also, that the machine has been constructed uniformly in conformity with the description contained in the patent of 1851, as well as in conformity with the description contained in the patent of 1854. Further testimony upon this subject was given by Skardon. He stated that he had been an agent for these sewing machines for a long time, and that the machines had been uniformly, in this respect, constructed in the same way.

We do not construe this instrument with the same stringency that is applied to it by the plaintiffs' counsel. We think that the language used—"as mentioned in the patent of 1851"—was employed merely for the purpose of identifying the machine, and that it had no reference whatever to any peculiarity in the description contained in that patent. We think that, upon the whole testimony, there can be no doubt that the Singer machine as produced upon the trial, and the Singer machine as used by these defendants, was the Singer machine mentioned in the patent of 1851; and that this paper is a clear assignment of any right of Burdell to J. Payne Lowe to use that machine within the territory in respect to which the plaintiffs claim an exclusive right under the Wilson patent. It is not necessary to discuss the other view relating to this subject, which was adverted to in the course of the argument upon this point, and that is, the light thrown upon this contract by the circumstances surrounding the parties at the time the contract was entered into. We are satisfied, looking at the paper, without reference to the circumstances surrounding the parties when the contact was made, that the conclusion we have arrived at, as to its construction, is the proper one—that it simply refers to the machine, without reference to any particular description; and we are satisfied that the proof given upon this subject falls within the terms of this contract; and that it was clearly shown, by the evidence, that the Singer machine, which was used by the defendants, was the machine covered by this arrangement executed by Burdell. That being the case, the Singer machines had nothing whatever to do with the controversy between these parties, and should have been wholly laid out of view. The proof given by Dr. Ide (and there was no other proof upon the subject—it stood uncontradicted), that nearly all the work was done upon these machines, from which nearly all the profits were derived, conducts us to the conclusion that, in this respect, the verdict of the jury was grossly erroneous—that the amount was by far too large; and, that, in that particular, the verdict was against the evidence in the case.

There is another matter relating to this subject, to which it is proper to refer, in connection with the state of the proof. As before remarked, the plaintiffs, in making out their case, exhibited a machine containing the mechanism in regard to which the plaintiffs have an exclusive right, and containing also many other elements of great importance, if not equaling or surpassing in importance the particular mechanism which was claimed by him. Now, no testimony was given to show what proportion that mechanism bore to the other portions of the machine, and the jury were left to grope in the dark to reach such conclusions as they, in the absence of the light of any other evidence upon the subject, might be able to attain. We suppose that, in that state of the case, the plaintiffs were entitled, at most, to nominal damages only. It was incumbent upon them to have given specific evidence to the jury, or at least that upon which the jury would have been warranted in forming a conclusion as to the extent and value of their claim. The supreme court, in the case of New York City v. Ransom, 23 How. [64 U. S.] 488, decided that:

"Where a plaintiff is allowed to recover only 'actual damages,' he is bound to furnish evidence by which the jury may assess them. If he rest his case, after merely proving an infringement of his patent, he may be entitled to nominal damages, but no more. He can not call on a jury to guess out his case without evidence. Actual damages must be calculated, not imagined, and an arithmetical calculation can not be made without certain data on which to make it."

And the court say further: "It was said,

in the case to which we have referred (Seymour v. McCormick, 16 How. [57 U. S.] 485), 'actual damages should be actually proved, and can not be assumed as a legal inference from facts' which afford no data by which they can be calculated. In order to find out the plaintiff's loss or damage, the jury were allowed to infer that the defendants have saved all the money indicated by the comparative powers of the engines with and without the improvement; and, after having made this inference, they may presume that the defendants would have paid this amount to the plaintiff for the use of his improvement."

It strikes us that this case is not unlike that put in Seymour v. McCormick [supra], of Stimpson's patent turn-out for railroads. Suppose, in a case of that kind, the plaintiff should exhibit in evidence a section of the road embracing his turn-out, and should prove also the entire amount of profits made by the railroad, and should leave the case to the jury, that they might infer, and calculate, and judge, from their ideas of the value of the turn-out, the share of profits which the plaintiff would be entitled to recover.

We think this case falls within the same category. It was incumbent upon the plaintiffs to prove the amount of damages to which they were entitled, and the defendants were entitled to hear that testimony, with opportunity to cross-examine the witnesses who testified upon the subject. The exhibition of the machine itself is not such evidence as entitled the plaintiffs to anything more than nominal damages. It is well settled by the case of Seymour v. McCormick, that where an inventor has invented only an improvement, and there is a violation of his right under his patent to use that improvement in connection with the invention of others, or in connection with a machine previously known and used, in either case his damages must be limited to the value of his improvement in connection with the other elements of the machine. That is a subject in regard to which it may be difficult to give definite proof; but the difficulty does not change the legal principle which applies. Such proof must be given. In this case the proof was not given. We hold these two objections to be fatal to the verdict.

There is another part of this case, to which at the request of my learned brother who sat upon the trial, I direct my attention for a few moments, although it is not necessary to the determination of this motion. It was, however, important in this case, and may be so in a future trial; and for these reasons, I will submit the present views of the court upon the subject. I refer to the Crary contract.

The question is, whether that contract was revocable at the option of Burdell? The facts are, as I understand them, that Crary proceeded, in good faith, to execute this contract. He opened an office in Columbus, employed clerks, bought machines, made one or more monthly reports, and made one or more monthly payments. Now, it may be conceded that there was such a failure of consideration on the part of Crary, by what subsequently occurred, as would induce a court of equity to rescind the contract; but no such allegation has been made. The question is, whether Burdell had the power, at his option, to rescind the contract? I think he has not.

I am inclined to put the case, as regards this point, upon another ground. This contract undoubtedly did create an agency on the part of Crary. Generally, an agency is revocable; but it is equally well settled that an agency coupled with an interest is not revocable; and here, it seems to me, there was such an interest vested in Crary as clearly took away from Burdell his right to rescind it by merely giving a notice.

Then, the contract being in force, the question arises as to how far Crary had power to make compromises and to enter into arrangements, to make an accord and satisfaction, as regards the violations of the rights of Burdell, in respect to the particular locality to which the contract relates. The contract provides that if suits should be brought for such violation of the rights of Burdell, the proceeds of the suits should be equally divided between the parties; and it provides further, that no such suit should be instituted without the consent of Burdell. Now, we feel very clear that. taking the whole contract together, the implication is clear that, although Crary has not the authority to institute a suit without the consent of Burdell, he might terminate one; and we think it equally clear that he might make a settlement which would be binding without the institution of any suit. That is our inference. Here, a settlement was made with the defendants; accord and satisfaction were made. The proof of the execution of that paper by Crary, and the proof of Crary's agency, make it all that was accorded by the face of it, and it was not necessary in that case, more than in any other case of that kind, for the defendants to prove, in addition to the execution, the fact that what was in that paper was true, i. e., that there was an actual settlement. On the contrary, the matter was very properly, in my judgment, put to the jury by my learned brother, upon the ground that notwithstanding this receipt. if the surrounding circumstances were such as satisfied the jury that that paper was founded in fraud—was not a bona fide transaction —was gotten up between the defendants and Crary, in evasion of the rights of these plaintiffs, to defeat this action—they were at liberty to disregard it.

But, as we now understand the subject, even assuming the nullity of that pretended accord and satisfaction, and the invalidity of

that paper executed by Crary, still, if this contract were open, there could by no possibility be any close monopoly on the part of Burdell and his assignees; for, here was a valid right, and an obligation resting upon Crary to sell these machines, and the right, upon the part of Burdell, to participate in the profits arising from these sales. If this contract were in force, there could be no close monopoly, such as is claimed, on the part of Burdell, and which was necessary to give him a right to damages upon the principle of profits.

The court say, in the leading case of Seymour v. McCormick [supra], while they recognize the rule that where there is no license fee, the plaintiff is entitled to compensation upon the principle of profits, it is only where, from the peculiar circumstances of the case, no other rule can be found, that the defendant's profits become the criterion of the plaintiff's loss. Now, was this a case of that kind? In the first place, here was this right of Crary, and this obligation resting on him to sell these machines, and he had an interest, and a very cogent one, to sell all he could, and there was a right reserved to Burdell on his part, to participate in the profits to the extent of those sales; and we have held he could not revoke that contract. The proof was that Crary did sell, and had accounted to Burdell for the profits arising from the sales up to a certain time; and here the question arises, upon whom rested the burden of proof? When the plaintiffs show as they did prima facie, that they intended to keep a close monopoly, and there was no proof to the contrary, then, undoubtedly, according to all the authorities upon the subject, they were entitled to recover damages according to the principle of profits; but when the defendants came in with their proof and showed there was no close monopoly, what followed? It followed, as a necessary consequence, that a different rule of compensation for damages—that of the license fee—must be applied. Upon whom rested the burden of proof as to that license fee under that state of the case? It seems to me that the proof to which I have adverted having been given, the burden of proof then shifted under the principle that "where the plaintiff is entitled to recover only actual damages, he is bound to furnish the proof by which the jury can assess them. If he rest his case after merely proving an infringement of his patent, he may be entitled to nominal damages, but no more. He can not call on a jury to guess out his case without evidence. Actual damages must be calculated, not imagined, and an arithmetical calculation can not be made without certain data on which to make it."

It seems to me that where, from the evidence, the damages are to be calculated upon the basis of profits, it is incumbent upon the plaintiff to prove those profits as the basis and data of that calculation; and where,

from the state of the evidence, the other principle applies—compensation for a license fee—the same principle of evidence applies, and the same result ensues—the burden of proof rests upon him. If we are right in the conclusion to which we have come as regards the continued existence of this contract between Crary and Burdell, then the consequence follows, whether we regard the amount of profit or the license fee as the basis and standard of their recovery of damages, the burden of proof rested upon the plaintiffs, and it was for them to give proof so specific in its character that the jury could make the proper calculation of damages, and, in the absence of such proof, they could only be entitled to nominal damages. If, in the future trial of this case, this point should become material, we should be happy to hear counsel further upon it. We can come to no other conclusion upon the views we have taken of this case—speaking of the points which I have just discussed—than that the verdict in this case is against the evidence, and that it is against the law of the case, and that these grounds for a new trial are well taken. The verdict must be set aside, and a new trial ordered.

[NOTE. The measure of damages for infringement of a patent should be a fair and adequate compensation for the injury sustained by the infringement. Parker v. Hulme, Case No. 10,740; Buck v. Hermance, Id. 2,082; McCormick v. Seymour, Id. 8,726; Taylor v. Carpenter, Id. 13,785; Hall v. Wiles, Id. 5,954; Pitts v. Hall, Id. 11,192; Cowing v. Rumsey, Id. 3,296; Earle v. Sawyer, Id. 4,247; Stephens v. Felt, Id. 13,368; Foote v. Silsby, Id. 4,916. The burden of proof is upon plaintiff. National Car Brake Shoe Co. v. Terre Haute Car & Manuf'g Co., 19 Fed. 514; Carter v. Baker, Case No. 2,472; Buerk v. Imhaeuser, Id. 2,107; Gould's Manuf'g Co. v. Cowing, Id. 5,642; Philp v. Nock, 17 Wall. (84 U. S.) 460; Wooster v. Muser, 20 Fed. 162; Garretson v. Clark, Case No. 5,249; Fitch v. Bragg, 16 Fed. 243; Rogers v. Beecher, 3 Fed. 639; New York City v. Ransom, 23 How. (64 U. S.) 487; Spaulding v. Tucker, Case No. 13,220; Calkins v. Bertrand, 8 Fed. 755. In an action at law, actual damages, only, are recoverable. Carr v. Rice, Case No. 2,440; McCormick v. Seymour, supra; Schwarzel v. Holenshade, Case No. 12,506; Hayden v. Suffolk Manuf'g Co., Id. 6,261; Tatham v. Le Roy, Id. 13,760; Carter v. Baker, supra; Birdsell v. Coolidge, 93 U. S. 64. And see Rice v. Heald, Case No. 11,752; Whitney v. Emmett, Id. 17,585. Such damages are the damages in fact (Whittemore v. Cutter, Id. 17,-601; Goodyear v. Bishop, Id. 5,559); the difference in value between the improved patented article and the old one (Brodie v. Ophir S. M. Co., Id. 1,919); the profits made by defendant (Conover v. Rapp, Id. 3,124). Nominal damages will be allowed on proof of the infringement. Whittemore v. Cutter, Cases Nos. 17,-600 and 17,601; Carter v. Baker, Case No. 2,472; Campbell v. Barclay, Id. 2,353; Gould's Manuf'g Co. v. Cowing, Id. 5,643; Ingersoll v. Musgrove, Id. 7,040; New York City v. Ransom, 23 How. (64 U. S.) 487; Blake v. Robertson, 94 U. S. 728; Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326. See, also, Whitney v. Emmett, supra; Schillinger v. Gunther, Case No. 12,457; Knight v. Gavit, Id. 7,884; Garretson v. Clark, Id. 5,248; Matthews v. Spangenberg, 14 Fed. 350. But see Graham v. Geneva Lake Crawford Manuf'g Co., 11 Fed. 138. Nominal

damages should be awarded where the infringers have no knowledge of the patentee's right (Bryce v. Dorr, Case No. 2,070), or are induced to infringe by the fraudulent conduct of the patentee (Washburn v. Gould, Id. 17,214); also where the patentee charged royalty oppressively (Matthews v. Spangenberg, 14 Fed. 350). And see, generally, Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326; Calkins v. Bertrand, supra; Schillinger v. Gunther, supra; Steam Stone Cutter Co. v. Windsor Manuf'g Co., Case No. 13,335. Remote or conjectural damages cannot be recovered. Carter v. Baker, supra; Buerk v. Imhaeuser, supra. Punitive damages may be allowed when the infringement is of an aggravated character. Parker v. Corbin, Case No. 10,731; Buerk v. Imhaeuser, supra; Hogg v. Emerson, 11 How. (52 U. S.) 587; American Nicholson Pav. Co. v. Elizabeth, Case No. 309; Emerson v. Simm, Id. 4,443; Peek v. Frame, Id. 10,903. The infliction of punitive damages is for the court,—Seymour v. McCormick, 16 How. (57 U. S.) 480,—and not within the province of the jury,—Whittemore v. Cutter, supra; Pitts v. Hall, supra; Stimpson v. The Railroads, Case No. 13,456; Parker v. Corbin, supra. Contra, Hall v. Wiles, Case No. 5,954. The jury should find the actual damages, and it is for the court, in its discretion, to increase them. Hogg v. Emerson, supra; Seavy v. Seymour, Case No. 12,596; Judson v. Bradford, Id. 7,564; Stephens v. Felt, Id. 13,368; Guyon v. Serrell, Id. 5,881; Hall v. Wiles, supra. This discretion should only be exercised where plaintiffs are driven to litigation by wanton and persistent infringement. Brodie v. Ophir S. M Co., Case No. 1,919; Peek v. Frame, supra. A court of equity will not increase the damages. Livingston v. Jones, Case No. 8,414. And see, as to increased damages under act of 1798, Kneass v. Schuylkill Bank, Case No. 7,876; Act 1836 (5 Stat. 117); Campbell v. James, 5 Fed. 806; Guyon v. Serrell, supra; Stimpson v. The Railroads, supra; Act 1846; Allen v. Blunt. Case No. 217; Act of July 8, 1870; Carew v. Boston Elastic Fabric Co., Case No. 2,397; also. Schwarzel v. Holenshade, Id. 12,506. Counsel fees may be included in the damages. Boston Manuf'g Co. v. Fiske, Id. 1,681; Allen v. Blunt, supra; Parker v. Corbin, supra. Contra, Whittemore v. Cutter, supra; Stimpson v. The Railroads, supra; Philp v. Nock, 17 Wall. (84 U. S.) 460; Bancroft v. Acton, Case No. 833; Teese v. Huntingdon. 23 How. (64 U. S.) 2. And see Pierson v. Eagle Screw Co., Case No. 11.156; Parker v. Hulme, supra; Blanchard Gun Stock v. Warner, Case No. 1,521. Expenses of the suit are proper elements of damage. Alden v. Dewey, Id. 153; Pierson v. Eagle Screw Co., supra; Holbrook v. Small, Case No. 6.596. "Profits" may be recovered in addition to "damages," the two terms, as used in the act, not being convertible. Buerk v. Imhaeuser, supra; Goodyear Dental Vulcanite Co. v. Van Antwerp, Case No. 5,600; Williams v. Rome, W. & O. R. Co., 2 Fed. 702.]